**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| The Aldo Group Inc., *et al.*[1] | ) | Case No. 20-11060 (KBO) |
| Debtors in Foreign Proceedings. | ) | (Joint Administration Requested) |

**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, (III) RECOGNITION OF INITIAL ORDER AND AMENDED INITIAL ORDER, AND (IV) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

The Aldo Group Inc. ("Aldo Canada"), in its capacity as the Canadian Court-appointed and authorized foreign representative (the "Foreign Representative") for the above captioned debtors (the "Debtors"), which are the subjects of reorganization proceedings (the "CCAA Proceedings") commenced under Canada's *Companies' Creditors Arrangement Act* (the "CCAA"), pending before the Superior Court, Commercial Division, in and for the Judicial District Of Montréal, Canada (the "Canadian Court"), filed chapter 15 petitions for each of the Debtors (the chapter 15 petitions, together with this Verified Petition, the "Petitions for Recognition"), and respectfully states as follows:

## RELIEF REQUESTED

1. The Foreign Representative has commenced these chapter 15 cases as ancillary proceedings to the CCAA Proceedings and respectfully files this Verified Petition contemporaneously with the required accompanying documentation pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "Bankruptcy Code").

[1] The Debtors in these chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers or other unique identifier are as follows: The Aldo Group Inc. (2186); Southwest Capital Holdings Inc. (8248); Aldo U.S. Inc. (6704); Aldo Marketing LLC (1748); Aldo Shoes West Forty Second, LLC (2610); Aldo 1125 Third Ave. Corp. (2110); Aldo 5th Ave. Inc. (2112); Aldo 250 West 125 Inc. (2324); and 1230 Avenue of the Americas LLC (6704). The Debtors' principal offices are located at 2300 rue Émile-Bélanger, Montréal, Canada H4R 3J4.

2. The Foreign Representative requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, pursuant to sections 105(a), 362, 363, 364(e), 365(a), 365(e), 1504, 1507, 1509, 1510, 1515, 1517, 1520, and 1521 of the Bankruptcy Code that (collectively, the "Relief Requested"):

(a) recognizes the CCAA Proceedings as foreign main proceedings (as defined in section 1502(4) of the Bankruptcy Code), or in the alternative as foreign nonmain proceedings (as defined in section 1502(5) of the Bankruptcy Code);

(b) recognizes the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the CCAA Proceedings;

(c) gives full force and effect in the United States to the Amended Initial Order, including any and all extension or amendments thereof authorized by the Canadian Court and extending the protections of the Amended Initial Order to the Debtors on a final basis;

(d) grants the Debtors all of the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, which shall apply with respect to the Debtors and the Debtors' property that is now or in the future located within the territorial jurisdiction of the United States;

(e) grants further additional relief as authorized by section 1521 of the Bankruptcy Code (or section 1507 as the Court deems necessary), including extending on a final basis the provisional relief requested in the Provisional Relief Motion (as defined herein);[2] and

(f) provides such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of

[2] The Debtors anticipate the Amended Initial Order will be entered on or around May 15, 2020 in a form substantially similar to the form attached to the Galarneau Declaration as **Exhibit 10**.

Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

4. These Chapter 15 Cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Petitions for Recognition of the CCAA Proceedings in accordance with section 1515 of the Bankruptcy Code.

5. Venue in this district is proper pursuant to section 28 U.S.C. § 1410(1) and (3).

## BACKGROUND

6. Aldo Canada and its U.S. and international affiliates (the "Aldo Corporate Group") are a global leader in footwear fashion apparel. Known for its brands, product expertise and leadership in digital commerce, the Aldo Corporate Group operates stores in more than 100 countries, all from its corporate headquarters in Montréal, Canada. *See* Galarneau Decl. ¶6.

7. On May 7, 2020, the Debtors filed petitions under the CCAA to commence restructuring proceedings under the supervision of the Canadian Court. That same day, the Canadian Court entered an initial order (the "Initial Order")[3] appointing Ernst & Young Inc. ("EY," or the "Monitor") to monitor and assist the Debtors in their business and financial affairs in accordance with section 23 of the CCAA. The Canadian Court also appointed the Foreign Representative to assist the Debtors pursuant to paragraph 58 of the Initial Order. *See* Galarneau Decl. ¶1.

8. The Debtors further anticipate that the Canadian Court will enter an amended and restated Initial Order (the "Amended Initial Order")[4] on or around May 15, 2020. A description of the relief provided in the Initial Order and a description of the proposed relief set forth in the

[3] A copy of the Initial Order is attached to the Galarneau Declaration (as defined below) as **Exhibit 1**.

[4] The form of the proposed Amended Initial Order is attached to the Galarneau Declaration (as defined below) as **Exhibit 10**.

Amended Initial Order is set forth below and in the *Motion of The Aldo Group Inc., As Foreign Representative of the Aldo Group Inc. and Certain of its Affiliates, for an Order Granting Certain Provisional Relief* (the "Provisional Relief Motion") filed contemporaneously herewith.

9. On the date hereof, the Foreign Representative filed the Petitions for Recognition under chapter 15 of the Bankruptcy Code for recognition of the CCAA Proceedings, thereby commencing the Debtors' chapter 15 cases.

10. Additional information about the Debtors' business and operations, the events leading up to the filing of the Petitions for Recognition, and the facts and circumstances surrounding the CCAA Proceedings and these Chapter 15 Cases are set forth in the contemporaneously filed *Declaration of David Galarneau in Support of the Debtors' Chapter 15 Petitions and First Day Pleadings in Foreign Proceedings* (the "Galarneau Declaration"). The Galarneau Declaration is incorporated herein by reference.

**BASES FOR RELIEF REQUESTED**

11. The Relief Requested is based on the provisions of chapter 15 of the Bankruptcy Code. The purpose of chapter 15 is to "incorporate the Model Law on Cross-Border Insolvency (the "Model Law") so as to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a). In interpreting chapter 15, a court is to "consider its international origin, and the need to promote an application of [chapter 15] that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508.

12. Consistent with these principles, as provided in the Galarneau Declaration, the Foreign Representative commenced these Chapter 15 Cases as ancillary proceedings to obtain recognition of the CCAA Proceedings with the ultimate goal of giving effect in the United States to the Debtors' Canadian restructuring. Pursuant to this goal, the Foreign Representative intends

to seek recognition from this Court consistent with principles of comity to give effect to an order from the Canadian Court sanctioning a plan of reorganization, which is to be negotiated.

13. In the interim, as further set forth in the Provisional Relief Motion, the Foreign Representative seeks recognition of the Interim Order to, among other things (i) authorize the Debtors to enter into and grant liens and other lender protections with respect to a financing arrangement to provide the Debtors with necessary liquidity to continue operations (the "Interim Financing"), (ii) provide a stay with respect to the Debtors' and their sole director and officers, including to ensure that no dissident creditors can bypass the CCAA Proceedings by commencing litigation or taking other actions in the United States to obtain a greater recovery than other, similarly situated, creditors, (iii) provide a limited charge to the sole director and officers and certain of the Debtors' and the Monitor's professionals in connection with the restructuring, (iv) authorize the Debtors to honor certain Customer Programs, such as gift card programs, to maintain the customer loyalty that underpins and is fundamental to the Aldo Corporate Groups' business and going concern value, (v) authorize the Debtors, subject to the notice requirements in the CCAA, to disclaim or resiliate (*i.e.*, cancel) leases and executory contracts (including employee contracts) in the CCAA Proceedings—including with respect to leases and contracts that are either governed by U.S. law or within the territorial jurisdiction of the United States—which is necessary to restore the health and profitability of the business, and (vi) with oversight from the Monitor and/or Canadian Court, and in the interest of efficiency, cost reduction and convenience, authorize the Debtors to convey, transfer, assign, lease, or in any other manner dispose of certain property outside of the ordinary course of business provided that the price in each case does not exceed CDN$100,000 or CDN$500,000 in the aggregate.

14. In addition, as further set forth in the Provisional Relief Motion, the Debtors also seek recognition of the Amended Initial Order to the extent it supersedes the Initial Order upon approval by the Canadian Court, which is anticipated (if granted) on or around May 15, 2020 to provide, among other things, the following additional relief: (i) increase the Debtors' borrowing under the Interim Facility, (ii) increase the CCAA Charges, and (iii) authorize the Debtors to pay rent twice-monthly, liquidate certain inventory, furniture, fixtures and equipment and manage landlord issues related thereto pursuant to the Amended Initial Order and the Sales Guidelines.

15. Furthermore, the Foreign Representative submits that recognition of the CCAA Proceedings will not undermine the rights of U.S. creditors. All creditors of the Debtors, including any in the United States, will have the opportunity to assert their claims or rights in the CCAA Proceedings and are sufficiently protected as they are expected to receive substantially similar treatment under the CCAA Proceedings as they would in bankruptcy proceedings in the United States. As the Debtors are still in the plan formulation and negotiation stage of their CCAA restructuring, the Chapter 15 Cases will also provide U.S. creditors notice and time to assert their rights in the CCAA Proceedings.

**A. Recognition of the CCAA Proceedings as Foreign Main Proceedings and Aldo Canada as Its Foreign Representative Is Appropriate**

16. Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code. As explained below, the CCAA Proceedings, the Foreign Representative and the Petitions for Recognition satisfy all of the foregoing requirements.

(i) *The CCAA Proceedings are Foreign Main Proceedings or in the Alternative Foreign Nonmain Proceedings*

17. The CCAA Proceedings are foreign main proceedings and, as such, satisfy the first condition for the entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.

(a) *The CCAA Proceedings are "foreign proceedings"*

18. As an initial matter, the CCAA Proceedings come within the general definition of a "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code, which states as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

19. Section 101(23) requires that a "foreign proceeding" (1) be a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) under the supervision of a foreign court and (4) for the purpose of reorganizing or liquidating the assets and affairs of the debtor. *See* 11 U.S.C. § 101(23). The statute defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

20. The CCAA Proceedings are foreign proceedings that satisfy the requirements of section 101(23) of the Bankruptcy Code. As set forth in the *Declaration of Denis Ferland* (the "Ferland Declaration") filed contemporaneously herewith, proceedings under the CCAA are (1) voluntary insolvency proceedings, (2) in Canada, (3) that occur under the supervision of a

Canadian court, (4) in which a debtor reorganizes or liquidates its business and distributes value to creditors pursuant to a plan.

21. In many ways, the CCAA is similar to a case under chapter 11. Absent exceptional circumstances, and subject to oversight by a court-appointed monitor and the consent of the Canadian court, the debtor's management and board of directors remain in place and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, entering into financing arrangements and/or changing corporate structures. Upon the commencement of a CCAA proceeding, the Canadian court appoints a qualified monitor, who functions as an independent observer of the proceedings and the debtor's business and (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company, (iii) notifies the company's creditors and, if applicable, shareholders of any meetings and tabulates votes at these meetings, if held, (iv) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approves the disclaimer of contracts and leases, (vi) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (vii) prepares a report on the plan of arrangement, which is usually included in the mailing of the plan, if one is filed. Consent of the monitor is generally not required for the debtor to manage its business, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor and/or its creditors. Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course, court approval is generally required for such transactions and the court gives weight to the monitor's recommendations concerning such transactions.

22. Upon the commencement of a CCAA proceeding, all actions against the debtor and its assets are stayed, wherever located. The stay is granted for a maximum period of 10 days, but is typically extended where the debtor can show it continues to act with good faith and due diligence. There is no limit on the number or duration of these extensions of the stay. In CCAA proceedings, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the proceedings.

23. During a CCAA proceeding, a debtor is also able to obtain postpetition financing (*i.e.*, DIP financing), subject to a hearing and court approval, after showing that the proposed financing is in the best interests of its estate. Such borrowings would typically have priority status in the CCAA proceeding, and, if unsecured financing is unavailable, the debtor is permitted to borrow on a secured basis. The Canadian court may also approve priority charges against the company's assets, which take priority over existing secured creditors, where notice of the charge approval hearing is given to the potentially affected creditors and the court is of the opinion that such charges are necessary in the circumstances.

24. In a CCAA proceeding, on or after the day on which the CCAA proceedings commence, the debtor may disclaim or resiliate (*i.e.*, cancel) any agreement (including leases) to which it is a party by giving a notice of at least 30 days (the "Disclaimer Notice Period"). In the case of lease agreements, the CCAA generally requires that the debtor pay post-filing rent due during the Disclaimer Notice Period and until the lease agreement is terminated. In addition, the monitor must approve the proposed disclaimer or resiliation. An agreement as to which a disclaimer notice has been sent is automatically disclaimed or resiliated—which has the legal

effect of terminating the lease agreement—at the expiration of the Disclaimer Notice Period unless within 15 days after the day on which the notice was given, the counterparty to the agreement files a challenge, which entitles the counterparty to a hearing before the Canadian Court. Furthermore, a counterparty to the agreement who suffers a loss in relation to the termination resulting from disclaimer or resiliation is considered to have an unsecured claim, the size of which will depend on the damage to the counterparty, which will be paid in accordance with the plan of arrangement sanctioned by the Canadian Court.

25. For a plan of arrangement to be binding on each class of creditors, a majority of the proven creditors in that class, by number, together with two-thirds (2/3) of the proven creditors in that class, by dollar value, must approve the plan presented. If a class of creditors approves the plan, it is binding on all creditors within the class, subject to the Canadian court's approval of the plan. If all of the classes of creditors approve the plan, the Canadian court must then approve the plan as a final step. Upon Canadian court approval, the company continues forward as outlined under the plan until it has satisfied the requirements under the plan. If a class of creditors or the Court does not approve the plan, the company does not automatically go into bankruptcy, but the stay of proceedings is lifted.

26. Throughout a CCAA proceeding, the court retains broad discretion to issue orders that it considers appropriate under the circumstances. Furthermore, any "interested person" seeking to object to such proposed orders or the plan of arrangement may appeal to the Canadian court.

27. Given, among other things, the similarities between the CCAA and chapter 11, the Canadian court and monitor's significant oversight in CCAA proceedings and creditors' ability to meaningfully participate in such proceedings, U.S. courts have routinely and

consistently held that Canadian restructuring proceedings under the CCAA qualify as "foreign proceedings" under section 101(23) of the Bankruptcy Code. *See, e.g.*, *In re U.S. Steel Canada Inc.*, No. 17-11519 (MG) (Bankr. S.D.N.Y. June 29, 2017) [Docket No. 12]; *In re Thane Int'l, Inc.*, No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) [Docket No 41]; *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Dec 2, 2015) [Docket No. 100]; *In re Lone Pine Res. Inc.*, No. 13-12487 (BLS) (Bankr. D. Del. Oct, 18, 2013) [Docket No. 58]; *In re Sino-Forest Corp.*, No. 13-10361 (MG) (Bankr. S.D.N.Y. Apr. 15, 2013) [Docket No. 16]; *In re Xentel Inc.*, No. 13-10888 (KG) (Bankr. D. Del. May 17, 2013) [Docket No. 26]; *In re Cinram Int'l Inc.*, No. 12-11882 (KJC) (Bankr. D. Del. July 25 26, 2012) [Docket No. 97]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [Docket No. 70]; *In re Nortel Networks Corp.*, No. 09-10164 (KG) (Bankr. D. Del. Feb. 27, 2009) [Docket No. 40].

(b) *The CCAA Proceedings are a "foreign main proceeding"*

28. In addition to qualifying as a "foreign proceeding" under section 101(23), the CCAA Proceedings qualify as "foreign main proceeding[s]." Foreign main proceeding is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." *See* 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding that is subject to the petition "is pending in the country where the debtor has the center of its main interests").

29. The location of a debtor's "center of main interests" ("COMI") is determined on the date when the chapter 15 petition was filed, though "[a] court may consider the period between the commencement of the foreign proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013); *see also In re Irish Bank*

*Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *11(Bankr. D. Del. Apr. 30, 2014), *aff'd*, 538 B.R. 692 (D. Del. 2015) ("The plain language of the statute clearly indicates that the relevant time period to consider is the date of filing of the Chapter 15 petition, not the debtor's 'entire operational history.'" (quoting *Morning Mist*, 714 F.3d at 133)).

30. The Bankruptcy Code neither defines nor provides a conclusive test for determining the location of a debtor's COMI. While there is a statutory presumption that a debtor's "registered office" is its COMI "in the absence of evidence to the contrary," *see* 11 U.S.C. § 1516(c), the legislative history makes clear that this presumption is rebuttable and that the rule of the "registered office," *i.e.,* "place of incorporation," is "designed to make recognition as simple and expedient as possible" in cases where the facts are not controversial rather than to establish a conclusive presumption. H.R. Rep. No. 109-31, pt. 1, at 112-13 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 175. Thus, the court in *In re Bear Stearns* observed that

> This presumption permits and encourages fast action in cases where speed may be essential, while leaving the debtor's true 'center' open to dispute in cases where the facts are more doubtful . . . . This presumption is <u>not a preferred alternative where there is a separation between a corporation's jurisdiction of incorporation and its real seat</u>.
>
> Chapter 15 changed the Model Law standard that established the presumption in 'the absence of proof to the contrary', to a presumption in 'the absence of evidence to the contrary'. The legislative history explains that the word 'proof' was changed to 'evidence' to make it clearer using United States terminology that the ultimate burden is on the foreign representative . . . . Whatever may be the proper interpretation of the EU Regulation, the Model Law and Chapter 15 give limited weight to the presumption of jurisdiction of incorporation as the COMI.

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) (emphasis added, original emphasis and internal citations omitted); *see also In re Tri-Cont'l Exch. Ltd.*, 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) (similar view). With respect to Aldo Canada and Southwest, there is no separation between their jurisdiction of incorporation and their real seat, both of which (as

further explained below) are in Canada. Accordingly, the presumption of COMI is applicable with respect to Aldo Canada and Southwest. Because the Galarneau Declaration demonstrates the remaining Debtors' COMI is also in Canada, despite their U.S. incorporation, the presumption is not applicable with respect to the remaining Debtors.

31. To determine a debtor's COMI, courts have held that "the relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties." *Fairfield Sentry*, 714 F.3d at 130. "Among other factors that may be considered are the location of headquarters, decision-makers, assets, creditors, and the law applicable to most disputes." *Id.*; *see also In re Olinda Star Ltd*, No. 20-10712 (MG), 2020 WL 1652557, at *10 (Bankr. S.D.N.Y. Apr. 3, 2020) (while noting that no factor is dispositive, listing the following non-exclusive factors courts typically consider when determining COMI, "[1] the location of the debtor's headquarters; [2] the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); [3] the location of the debtor's primary assets; [4] the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; [5] and/or the jurisdiction whose law would apply to most disputes.) (citing *In re Servicos de Petróleo Constellaton S.A.*, 600 B.R. 237, 273 (Bankr. S.D.N.Y. 2019); *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (noting the applicability of similar factors, citation omitted).

32. Courts have also looked to a debtor's nerve center in determining COMI. *See, e.g.*, *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) ("[T]he court may consider the location of the debtor's 'nerve center,' 'including from where the debtor's activities are directed and controlled, in determining a debtor's COMI.'") (quoting *Fairfield*

*Sentry*, 714 F.3d at 138 n.10); *see also In re Irish Bank Resolution Corp. Ltd.*, Case No. 13-12159 (CSS), 2014 WL 9953792, at *16 (Bankr. D. Del. Apr. 30, 2014) ("Courts consider several factors when making a 'center of main interests' determination, including . . . the location of the debtor's headquarters . . . ."); *In re ABC Learning Ctrs.*, 445 B.R. at 333 (considering debtor's principal place of business). The "nerve center" test, as opposed to the "place of operations" test, seeks to ascertain:

> [T]he nerve center from which a corporation radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective. Under this test, courts focus on those factors that identify the place where the corporation's overall policy originates. The other test has been labeled the "place of operations" or "locus of operations" test. There, the effort is to identify the place in which a corporation conducts its principal operations. Courts generally apply the "nerve center" test when a corporation's operations are geographically widespread, and the "locus of operations" test when a corporation is centralized.

*Phoenix Four Inc. v. Strategic Res. Corp.*, 446 F. Supp. 2d 205, 214-15 (S.D.N.Y. 2006) (internal citations and quotations omitted). As the Aldo Corporate Group's operations are "geographically widespread," the nerve center test is far more instructive with respect to the COMI of each of the Debtors.

33. As discussed in the Galarneau Declaration, and for the reasons highlighted below, the Aldo Corporate Group is managed, operated and financed from its headquarters in Montréal Canada, which (in addition to the factors set forth below) is also where each of the Debtors' sole director, officers and managers all sit.

34. In addition, the following relevant activities point to Montréal, Canada for the Debtors' COMI:

a. All strategic and operational decisions for the Debtors, including Aldo U.S. and its subsidiaries, are made in Canada;

b. All accounting, purchasing and cash management functions for the Debtors occur in Canada;

c. The Debtors' accounting, financing and other operational books and records are located in Canada;

d. All corporate services for the Debtors, including tax support, legal services (excluding U.S. restructuring counsel), and issuance of checks for accounts payable are rendered in Montréal, Canada;

e. All terms of employment and related policies and procedures for the Debtors' employees are established and directed out of the corporate headquarters in Canada;

f. None of the Debtors maintain an office, apart from a statutorily required registered agent address for receiving legal process, in the United States;

g. The Debtors' largest creditors are located in Québec and their various loan arrangements are governed by the laws of Québec;

h. Most of the guarantee agreements, including the Southwest guarantee, are governed by the laws of Québec;

i. The ultimate shareholders of the Debtors are located in Canada; and

j. The majority of the logistical and intellectual property agreements necessary to operate the Debtors' businesses are made with Aldo Canada, but are used by the entire corporate group.

Indeed, Aldo U.S. and its subsidiaries are merely the U.S. sales arm of the Aldo Corporate Group with all "never center" functions conducted in Canada.

35. Although Aldo U.S. has a significant number of U.S. creditors, because of the overwhelming centralization of the Debtors' operations in Canada, any U.S. creditor either knew or should have known that Aldo U.S. was operated and managed from Canada. Aldo U.S.'s Canadian locus is further demonstrated by the following:

a. Aldo U.S.'s leases with U.S. landlords contain a Canadian address for sending notices to Aldo U.S. Certain of the leases further provide that Aldo U.S.'s records are maintained and accessible in Canada and the signatures of the individuals who executed the leases on behalf of Aldo U.S. were notarized in Canada. Because Aldo U.S. does not maintain a corporate office in the United States, it is highly probable that most, if not all, of the leases to which Aldo U.S. is a party were executed in Canada.

b. On Aldo U.S.'s warehouse services agreement dated January 16, 2020, between Aldo U.S. and Performance Team LLC (the "Performance Team"), for warehouse facilities and certain inventory distributions services for warehouses in California and New Jersey, the signature of Aldo U.S.'s vice-president was notarized in Montreal, Canada. Aldo U.S. also hosts half of the quarterly business reviews with the Performance Team in Canada, with the last review held in February 2020 in Montréal.

c. Aldo U.S.'s wholesale contracts with U.S. retailers provide that Aldo U.S.'s records are maintained and accessible in Canada and list a Canadian address for sending notices to Aldo U.S. Most of these contracts further indicate that Aldo U.S. requires its customers to attend "concept meetings", to determine the next year's orders and to review fashion trends, at the Montréal headquarters.

d. Many U.S. wholesale retailers travel to Canada to view sample merchandise at the Debtors' wholesale showrooms. The showrooms in Canada are maintained for Aldo U.S. because Aldo U.S. does not have any showrooms in the United States.

e. Aldo U.S. contracts for freight forwarding services through its Canadian headquarters. These services are provided to Aldo U.S. in the United States.

36. As such, this Court and the Aldo Corporate Group's creditors should objectively view Aldo Corporate Group to be conducting the administration of its affairs from Montréal, Canada, and the COMI for each of the Debtors to be Canada. Furthermore, courts have previously recognized CCAA proceedings for non-Canadian subsidiaries as "foreign main proceedings," where, as is the case here, they were part of a jointly administered CCAA proceeding with their Canadian parent and the debtor presented evidence, as here, of these entities' COMI being in Canada. *See*, *e.g.*, *In re Pac. Exploration & Prod. Corp.*, No. 16-11189 (JLG) (Bankr. S.D.N.Y. June 10, 2016) [Docket No. 25]; *In re John Forsyth Shirt Co. Ltd.*, No. 13-10526 (SCC) (Bankr. S.D.N.Y. Mar. 18, 2013) [Docket No. 24]; *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Dec. 2, 2015) [Docket No. 100]; *In re Talon Sys. Inc.*, No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30, 2013) [Docket No. 49]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [Docket No. 70]; *In re Catalyst Paper Corp.*, No. 12-10221 (PJW) (Bankr. D. Del. March 5, 2012) [Docket No. 89]; *In re Angiotech Pharm., Inc.*, No. 11-10269 (KG) (Bankr. D. Del. Feb. 22, 2011) [Docket No. 83].

37. For all of the reasons set forth above, the CCAA Proceedings are, and should be recognized as, foreign main proceedings.

(c) *In the Alternative, the CCAA Proceedings of the Non-Canadian Debtors Should Be Recognized as Foreign Nonmain Proceedings*

38. In the alternative, this Court should (i) grant the CCAA Proceedings of Aldo Canada and Southwest recognition as foreign main proceedings (the "Canadian Debtors"), as they are incorporated and have their "nerve center' in Canada, and (ii) grant the CCAA Proceedings recognition as foreign nonmain proceedings with respect to the U.S. incorporated Debtors (the "Non-Canadian Debtors"). Other courts have granted dual recognition to a foreign proceeding as a main and nonmain proceeding, applying the separate forms of recognition to distinct groups of debtors that are parties to a single foreign proceeding. *See, e.g., In re Mega Brands Inc.*, No. 10-10485 (CSS) (Bankr. D. Del. Mar. 23, 2010) [Docket No. 39]; *In re Rock Well Petroleum (U.S.), Inc.*, No. 08- 20797 (Bankr. D. Wyo. Feb. 27, 2009) [Docket No. 106].

39. Pursuant to the Bankruptcy Code, a "foreign nonmain proceeding" is defined as a "foreign proceeding" pending in a country where the debtor has an "establishment" within the meaning of section 1502. 11 U.S.C. § 1517(b)(2). "Establishment" is broadly defined in the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). As described above, the Non-Canadian Debtors are operationally and functionally integrated with the Canadian Debtors. Among other things, as discussed above, all the Debtors are organized under centralized senior management and utilize cash management and accounting functions whose nerve center resides in Canada. Given that the center of main interests of Aldo Canada and Southwest is undoubtedly in Canada, and given the relationship among all the Non-Canadian Debtors and the Canadian Debtors, each Non-Canadian Debtor clearly has an "establishment" in Canada within the meaning of Bankruptcy Code section 1502(2).

(ii) *Aldo Canada is a Foreign Representative Who is a Person*

40. The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a person or body. *See* 11 U.S.C. § 1517(a)(2).

41. The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

42. Pursuant to the Initial Order, the Canadian Court appointed Aldo Canada as the foreign representative for each of the Debtors and authorized it to apply for recognition of the CCAA Proceedings in the United States pursuant to chapter 15 of the Bankruptcy Code. *See* Galarneau Declaration, Ex. 1, ¶ 58. Accordingly, the Aldo Canada is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. Under section 101(41) of the Bankruptcy Code, the term "person" includes a corporation. Thus, Aldo Canada, as the foreign representative applying for recognition, is a "person" in satisfaction of the second element of section 1517(a) of the Bankruptcy Code.

(iii) *The Petitions for Recognition Meet the Requirements of Section 1515*

43. The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a)(3).

44. All of the requirements of section 1515 of the Bankruptcy Code have been met. First, the Debtors' Chapter 15 Cases were duly and properly commenced by the Foreign

Representative through the filing of these Petitions for Recognition as required by section 1515(a) of the Bankruptcy Code.

45. Second, pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition must be accompanied by one of the following:

a. a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

b. a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

c. in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

46. Section 1515(b) of the Bankruptcy Code is satisfied. Attached to the Galarneau Declaration as Exhibit 1 and incorporated by reference herein, is a true and correct copy of the Initial Order.

47. Third, in accordance with section 1515(c) of the Bankruptcy Code, the Petitions for Recognition contain a statement identifying the CCAA Proceedings as the only foreign proceedings currently pending with respect to each of the Debtors. Accordingly, the Petitions for Recognition meet the requirements of section 1515 of the Bankruptcy Code in satisfaction of the third requirement under section 1517(a) of the Bankruptcy Code.

48. For all of the reasons set forth above, the Foreign Representative respectfully submits that all of the requirements of section 1517(a) have been satisfied and, thus, that the entry of an order recognizing the CCAA Proceeding as foreign main proceedings (or, alternatively as to the Non-Canadian Debtors, as foreign nonmain proceedings) is proper.

**B. <u>The Debtor Is Entitled to the Automatic Relief Under 11 U.S.C. § 1520</u>**

49. Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign proceeding as a foreign main

proceeding, *see* 11 U.S.C. § 1520(a), including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and to the Debtor's property that is within the territorial jurisdiction of the United States. Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Foreign Representative respectfully submits that no further showing is required to the extent the Court recognizes the CCAA Proceeding as a foreign main proceeding.

50. Alternatively, to the extent Court determines to grant the CCAA Proceedings recognition (i) as foreign main proceedings with respect to the Canadian Debtors and (ii) as foreign nonmain proceedings with respect to the Non-Canadian Debtors, the Non-Canadian Debtors hereby request that the protections afforded by the automatic stay under section 362(a) of the Bankruptcy Code be extended to the Non-Canadian Debtors and their property within the territorial jurisdiction of the United States pursuant to section 1521 of the Bankruptcy Code. Such relief is necessary and appropriate to protect the assets of the Non-Canadian Debtors, which serve critical roles in the Aldo Group structure, including as lessees of important leases. Furthermore, the Non-Canadian Debtors' creditors would be sufficiently protected because they can avail themselves of the CCAA Proceedings to assert any and all rights.

## C. The Discretionary Relief Requested Is Necessary and Appropriate to Effect the Restructuring and Should be Granted

51. Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Such relief may include, among other things, "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. §1521(a)(7). The Court may

grant relief under section 1521(a) if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

52. For the reasons that follow and as set forth in the Provisional Relief Motion, incorporated herein by reference, the Foreign Representative asks this Court to exercise its discretion under section 1521(a) to extend on a final basis the following additional relief sought in the Provisional Relief Motion, including:

a. recognizing and enforcing in the United States, on a provisional basis, the Initial Order that, among other things:

i. authorizes the Debtors to enter into, perform and borrow, as an initial draw, up to CDN$5,000,000 under that certain interim facility (the "Interim Facility");

ii. grants the Interim Lenders a charge against the Aldo Canada and Aldo U.S.'s property for an aggregate amount of USD$6,000,000 (the "Interim Lender Charge") as security for all obligations to the Interim Lenders under the Interim Facility;

iii. grants the Debtors' directors and officers a charge against the Debtors' property for an aggregate amount of CDN$2,350,000 (the "Directors' Charge") as security for the Debtors' indemnification obligations owed to the Debtors' directors and officers in their capacity as such (solely to the extent in excess of applicable insurance coverage and excluding obligations or liabilities incurred as a result of such directors' or officers' gross negligence, willful misconduct or gross or intentional fault);

iv. imposes a stay with respect to claims or actions against the Debtors' directors and officers or their assets in connection with the director's or officer's position at the Debtor;

v. consistent with that certain Interim Facility, authorizes the Debtors to continue to honor or comply with any customer deposits, prepayments and similar programs (like gift cards) (the "Customer Programs");

vi. consistent with that certain Interim Facility, grants the Debtors authority to disclaim or resiliate (*i.e.*, cancel) leases and contracts (including terminate certain employee contracts), subject to the notice procedures and other requirements in the CCAA;

vii. grants the Monitor, the Monitor's legal counsel, the Debtors' (including the Foreign Representatives') legal counsel and the Monitor and Debtors' respective advisors (including financial advisor Greenhill & Co. Canada Ltd.) a charge against the Debtors' property for an aggregate amount of CDN$920,000 (the "Administration Charge," and together with the Directors' Charge and the Interim Lender Charge, the "CCAA Charges") as security for the professional fees and expenses incurred in connection with the CCAA Proceedings and Chapter 15 Cases; and

viii. subject to approval and oversight of the Monitor or further order of the Canadian Court, and consistent with that certain Interim Facility, in the interest of efficiency, cost reduction and convenience, grants the Debtors authority to convey, transfer, assign, lease, or in any other manner dispose of property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed CDN$100,000 or CDN$500,000 in the aggregate.

b. granting, on a provisional basis, to and for the benefit of the Interim Lenders, certain protections afforded by the Bankruptcy Code, including those protections provided by section 364(e) of the Bankruptcy Code;

c. applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on a provisional basis, pursuant to sections 105(a), 1519(a) and 1521(a)(7) of the Bankruptcy Code;

d. authorizing the Foreign Representative to operate the Debtors' businesses and administer the Debtors' assets on a provisional basis;

e. conditionally recognizing and enforcing in the United States, on a provisional basis, the Amended Initial Order, subject to the Canadian Court's approval and entry of the Amended Initial Order (anticipated to be issued on or around May 15, 2020),[5] that will supplement the Initial Order by, among other things:[6]

    i. authorizing the Debtors to continue to perform and borrow in total up to USD$60,000,000 (inclusive of the initial CDN$5,000,000 approved in the Interim Order) under that certain Interim Facility;

    ii. increasing the amounts of the CCAA Charges as follows:

        a. the Interim Lender Charge is anticipated to be increased to CDN$120,000,000;

---

5 The Foreign Representative will file the as-entered Amended Initial Order with the Court.

6 If the order entered by the Canadian Court differs in any material respects from the form attached as Exhibit 10 to the Galarneau Declaration, the Foreign Representative will apprise the court of such changes.

b. the Administrative Charge is anticipated to be increased to CDN$7,000,000; and

c. the Director Charge is anticipated to be increased to CDN$2,500,000.

iii. authorizing the Debtors to pay rent twice-monthly, liquidate inventory, furniture, fixtures and equipment and manage related landlord issues pursuant to the Amended Initial Order and the sales guidelines attached thereto (the "Sale Guidelines").

53. As mentioned above, while the Amended Initial Order will not have been entered by the Canadian Court by the date of filing this pleading, the Debtors anticipate the Amended Initial Order will supersede the Initial Order and be entered by the Canadian Court in a form substantially similar to the form attached to the Galarneau Declaration as **Exhibit 10** prior to this Court's hearing on the Petitions for Recognition.

54. As further explained in the Provisional Relief Motion, the Interim Lenders have agreed to provide the Interim Facility upon the terms outlined in the DIP Term Sheet (as defined in the Galarneau Declaration and attached thereto as **Exhibit 9**). The Foreign Representative understands that the terms of the Interim Facility were negotiated, proposed and entered into without collusion, in good faith and at arm's length. The Debtors will require access to a portion of the Interim Facility to fund, among other things, working capital requirements, other general corporate expenditures and the costs of administering their bankruptcy cases. As discussed in the Galarneau Declaration, the Debtors expect to run out of cash to continue operations in the week ending June 5, 2020, and potentially earlier, unless additional, immediate funding is provided through the Interim Facility. The funding provided by the Interim Facility is therefore necessary to give vendors, employees and other critical parties who deal with the Debtors confidence that the Debtors have access to funds to meet their post-filing obligations to such parties. Galarneau Declaration ¶ 38. Furthermore, the Interim Lenders have conditioned interim

availability of a portion of the Interim Facility on this Court's recognition of the protections granted by the Canadian Court. As such, the Foreign Representative requests that this Court grant final recognition and give effect to the Initial Order as, and to the extent, superseded by the Amended Initial Order with respect to assets of the Aldo Canada and Aldo U.S. now or in the future located within the territorial jurisdiction of the United States. The Interim Facility will preserve and maintain the going concern value of the Debtors' estates, which, in turn, is integral to maximizing value.

55. As explained in the Provisional Relief Motion, it is vital to the success of the Debtors' restructuring that actions against the Debtors' sole director and officers and their assets within the territorial jurisdiction of the United States are enjoined. The Debtors' sole director and officers have indemnification rights and have been granted a Directors' Charge against the Debtors, such that any judgment against them would be a *de facto* judgment against the Debtors and their assets—to the determent of creditors.

56. As explained in the Provisional Relief Motion, it is also essential that this Court recognize and give effect to the Debtors' authority (upon grant by the Canadian Court) to disclaim and resiliate (*i.e.*, cancel) leases and other executory contracts (including employment contracts) in the CCAA Proceedings—including the contracts and leases that are either governed by U.S. law or within the territorial jurisdiction of the United States. In a CCAA, prior to disclaimer, landlords generally may be entitled to payment of rent obligations that become due and owing post-filing. As such, any delay in disclaiming such leases could cause the Debtors to incur substantial additional post-filing rent obligations that will further diminish funds available for unsecured claims and thereby negatively affect recoveries for unsecured creditors in the CCAA Proceedings.

57. As also explained in the Provisional Relief Motion, section 365(e) of the Bankruptcy Code prohibits counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing. As the Debtors will not be disclaiming all of their leases and executory contracts, the Debtors could face significant harm resulting from the potential termination of critical contracts and leases. Absent the continued relief requested, counterparties may attempt to terminate these valuable contracts and leases.

58. The Debtors are seeking approval of the Canadian Court to pay rent on a twice-monthly basis, liquidate inventory, furniture, fixtures and equipment and manage landlord issues related to the same pursuant to the Amended Initial Order and Sales Guidelines. As the Debtors maintain hundreds of leases, court-approved guidelines will permit the Debtors to disclaim leases and liquidate property in the most efficient and cost effective manner possible, with a goal of avoiding disputes and potentially having to negotiate bespoke resolutions with hundreds of individual landlords.

59. Each of Aldo U.S., through Aldo Marketing, and Aldo Canada offers Customer Programs (such as gift cards) to its customers. As it is vital to maintain the confidence and loyalty the Debtors' customers to support future sales and their going concern value, the Debtors seek to honor their commitments to the Aldo Corporate Group's customers.

60. Furthermore, the purpose of chapter 15 is carried out by granting recognition of and giving effect in full to the Initial Order as, and to the extent, superseded by the Amended Initial Order, as it will (a) maximize value of the Debtors' assets, (b) facilitate the fair and efficient cross-border restructuring; and (c) foster cooperation between courts in Canada and the United States.[7]

---

[7] To the extent this Court believes section 1507 of the Bankruptcy Code is the appropriate section to grant any relief requested herein, the Foreign Representative requests such relief be granted thereunder.

## D. Relief Sought Herein is Consistent with the Purpose of Chapter 15 and U.S. Public Policy

61. Section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the United States. 11 U.S.C. § 1506. The Foreign Representative submits that the relief requested herein is not manifestly contrary to, and is in fact consistent with, the public policy of the United States.

62. It is well established that one of the fundamental goals of U.S. bankruptcy proceedings is the centralization of disputes involving the debtor. *See, e.g.*, *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F. 2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estates and its reorganization in the Bankruptcy Court….") (internal quotations and citations omitted); *see also Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1207 (3d. Cir. 1991) ("Consolidating all pre-petition claims against the debtor in one collective proceeding before a bankruptcy court is the essence of bankruptcy."); *In re Irish Bank Resolution Corp. Ltd.*, Case No. 13-12159 (CSS), 2014 WL 9953792, at *21 (Bankr. D. Del. Apr. 30, 2014) ("[R]ecognition of the [foreign] proceeding . . . would support the strong public policy of the United States in favor of a universalism approach to complex multinational bankruptcy proceedings."). Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfeld v. Investors Overseas Servs., Ltd.,* 471 F. Supp 1255, 1259 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1286 (2d Cir. 1979) (recognizing that Canadian liquidation Proceedings would not violate laws or public policy of New York or the United States).

63. Moreover, the purpose of chapter 15 is set forth in section 1501 and includes: (i) cooperation between courts of the United States and the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (ii) greater legal certainty for trade and investment; (iii) fair and efficient administration of cross-border insolvencies that protect the interests of all creditors, and other interested entities, including the debtor; (iv) protection and maximization of the value of the debtor's assets; and (v) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment. *See* 11 U.S.C. § 1501.

64. Recognition of the CCAA Proceedings as foreign main proceedings will enable the Debtors to implement fully their intended restructuring, maximize value, rescue a storied forty-eight (48) year old business and seek to preserve thousands of jobs. Moreover, recognizing the CCAA Proceedings will facilitate the orderly administration of the Debtors' assets and foster cooperation between courts in Canada and the United States in respect of the Debtors' restructuring. Such orderly administration is thus consistent with the public policy of the United States and the Bankruptcy Code.

65. Recognition of the CCAA Proceedings would also promote the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all creditors and interested parties. By recognizing the CCAA Proceedings and granting the relief requested, the process of resolving claims against the Debtors would be centralized in Canada, from where the Aldo Corporate Group functions. Claims would be treated in accordance with a restructuring plan that comports with Canada's CCAA (which closely resembles a U.S. chapter 11), and any disputes would be subject to the uniform jurisdiction of one tribunal, the Canadian Court.

**NOTICE**

66. The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m). The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions and the Foreign Representative's request for entry of the Final Order in the form and manner set forth in the *Motion of Foreign Representative for Entry of Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007*, filed contemporaneously herewith. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

[*Remainder of this Page is Intentionally Left Blank*]

WHEREFORE, for the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter an order (i) granting the relief requested herein and (ii) granting the Foreign Representative and the Debtors such other and further relief as the Court deems proper and just.

Dated: May 7, 2020
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@mnat.com
mharvey@mnat.com
ptopper@mnat.com

-and-

Peter A. Ivanick
Lynn Holbert
Alex M. Sher
**HOGAN LOVELLS US LLP**
390 Madison Ave.
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Peter.ivanick@hoganlovells.com
Lynn.holbert@hoganlovells.com
Alex.sher@hoganlovells.com

*Attorneys for the Foreign Representative*

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| The Aldo Group Inc., *et al.*[1] | ) | Case No. 20-11060 (KBO) |
| Debtor in Foreign Proceedings. | ) | (Joint Administration Requested) |

**ORDER GRANTING VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING (II) RECOGNITION OF FOREIGN REPRESENTATIVE, (III) RECOGNITION OF INITIAL ORDER AND AMENDED INITIAL ORDER, AND (IV) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon consideration of the *Verified Petition for (I) Recognition of Foreign Main Proceeding (II) Recognition of Foreign Representative, (III) Recognition of Initial Order and Amended Initial Order, and (IV) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 2] (together with the chapter 15 petitions filed for each of the Debtors, the "Petitions for Recognition"), the Galarneau Declaration,[2] the Ferland Declaration, and the Provisional Relief Motion (together with the Petitions for Recognition, the Galarneau Declaration and the Ferland Declaration, the "Chapter 15 Pleadings"), each filed on May 7, 2020 by or on behalf of the Foreign Representative, Aldo Canada, in its capacity as the duly-appointed foreign representative of the above captioned debtors (the "Debtors"), in a voluntary restructuring proceeding (the "CCAA Proceedings") under the *Companies' Creditors Arrangement Act*

[1] The Debtors in these chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers or other unique identifier are as follows: The Aldo Group Inc. (2186); Southwest Capital Holdings Inc. (8248); Aldo U.S. Inc. (6704); Aldo Marketing LLC (1748); Aldo Shoes West Forty Second, LLC (2610); Aldo 1125 Third Ave. Corp. (2110); Aldo 5th Ave. Inc. (2112); Aldo 250 West 125 Inc. (2324); and 1230 Avenue of the Americas LLC (6704). The Debtors' principal offices are located at 2300 rue Émile-Bélanger, Montréal, Canada H4R 3J4.

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Petition.

(the "CCAA") currently pending before the Superior Court, Commercial Division, in and for the Judicial District Of Montréal, Canada (the "Canadian Court"); and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012; and it appearing that venue is proper before this Court pursuant to 28 U.S.C. § 1410; and the Court having considered and reviewed the Chapter 15 Pleadings and having held a hearing to consider the relief requested in the Petitions for Recognition (the "Hearing"); and it appearing that timely notice of the filing of the Chapter 15 Pleadings and the Hearing has been given pursuant to the *Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007* and that no other or further notice need be provided; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A. This case was properly commenced pursuant to sections 1504, 1509 and 1515 of the title 11 of the United States Code (the "Bankruptcy Code").

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

C. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D. Venue is proper in this district pursuant to 28 U.S.C. § 1410.

E. The CCAA Proceedings are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code.

F. The CCAA Proceedings are pending in Canada, which is the country in which the Debtors have their center of its main interests and, as such, the CCAA Proceedings are "foreign main proceeding[s]" within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code and entitled to recognition as a foreign main proceeding in respect of each of the Debtors.

G. The Foreign Representative, Aldo Canada, is a "person," as such term is defined in section 101(41) of the Bankruptcy Code, has been duly appointed by the Debtors and has been declared by the Canadian Court as authorized to act as the "foreign representative" with respect to the CCAA Proceeding within the meaning of section 101(24) of the Bankruptcy Code.

H. The Petitions for Recognition meets all of the requirements set forth in section 1515 of the Bankruptcy Code and Fed. R. Bankr. P. 1007(a)(4) and 2002(q).

I. The CCAA Proceedings are entitled to recognition by the Court pursuant to section 1517(a) of the Bankruptcy Code and the Debtors have satisfied the eligibility requirements of section 109(a) of the Bankruptcy Code, as applicable.

J. The Debtors and the Foreign Representative are entitled to all of the relief set forth in section 1520 of the Bankruptcy Code.

K. Appropriate notice of the filing of, and the Hearing on, the Petition for Recognition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

L. The relief granted hereby is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to sections 105(a), 362, 363, 364, 365(a), 365(e), 1507(a), 1509(b)(2)-(3), 1520, 1521, 1522 and 1525 of the Bankruptcy Code, and will not cause hardship to creditors of

the Debtors or other parties in interests that is not outweighed by the benefits of granting that relief.

M. The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest.

N. Absent the relief granted hereby, the Debtors and their directors and officers may be subject to the prosecution of judicial, quasi-judicial, arbitration, administrative or regulatory actions or proceedings in connection with the CCAA Proceedings or otherwise against the Debtor and their directors and officers or their property, thereby interfering with and causing harm to, the Debtors, their creditors, and other parties in interest in the CCAA Proceedings and, as a result, the Debtors, its creditors and such other parties in interest would suffer irreparable injury for which there is no adequate remedy at law.

O. Absent the requested relief, the efforts of the Debtors, the Canadian Court and the Foreign Representative in conducting the CCAA Proceedings and effecting their restructuring therein may be thwarted by the actions of certain creditors, a result that will obstruct the purposes of chapter 15 as reflected in section 1501(a) of the Bankruptcy Code.

P. Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the Debtors' restructuring in the CCAA Proceedings, (iv) confers material benefits on, and is in the best interests of, the Debtors and their creditors, and (v) is important to the overall objectives of the such restructuring.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Petitions for Recognition and the Relief Requested are granted as set forth herein, and any objections thereto are overruled with prejudice.

2. The CCAA Proceedings are granted recognition with respect to each of the Debtors as a foreign main proceeding (as defined in section 1502 of the Bankruptcy Code) pursuant to sections 1517(a) and (b)(1) of the Bankruptcy Code.

3. Aldo Canada is recognized as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the CCAA Proceedings.

4. The Debtors and the Foreign Representative are granted all of the relief set forth in section 1520 of the Bankruptcy Code including, without limitation, the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtors and to the Debtors' property that is now within or in the future is located within the territorial jurisdiction of the United States.

5. The Foreign Representative is authorized to operate the business of the Debtors that is the subject of the CCAA Proceedings and exercise the powers of a trustee to the extent provided by 11 U.S.C. § 1520(a)(3).

6. The Initial Order or the Amended Initial Order (to the extent it supersedes the Initial Order), including any and all existing and future extensions, amendments, restatements, and/or supplements authorized by the Canadian Court, are hereby given full force and effect, on a final basis, with respect to the Debtors and the Debtors' and their property that now or in the future is located within the territorial jurisdiction of the United States.

7. Pursuant to 11 U.S.C. § 1521(a)(1)-(3), all persons and entities, other than the Foreign Representative and his representatives and agents, are hereby enjoined (to the extent they have not been stayed under section 1520(a)) from:

a. execution against any of the Debtors' and their directors and officers (the "Protected Parties") assets;

b. the commencement or continuation, including the issuance or employment of process, of a judicial, quasi-judicial, administrative, regulatory, arbitral, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against the Debtors or other Protected Parties, which in either case is in any way related to, or would interfere with, the administration of the Debtors' estates in the Canadian Proceedings;

c. taking or continuing any act to create, perfect or enforce a lien or other security interest, setoff or other claim against the Debtors or other Protected Parties or any of their property or proceeds thereof;

d. transferring, relinquishing or disposing of any property of the Debtors to any person or entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

e. commencing or continuing an individual action or proceeding concerning the Debtors' or other Protected Parties' assets, rights, obligations or liabilities; and

f. declaring or considering the filing of the Canadian Proceedings or these Chapter 15 Cases a default or event of default under any agreement, contract or arrangement;

provided, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States; and provided further that nothing herein shall: (x) prevent any entity from filing any claims against the Debtors in the Canadian Proceedings or (y) prevent any entity from seeking relief from the Canadian Court in the Canadian Proceedings or this Court in these Chapter 15 Cases, as applicable, for relief from the injunctions contained in the Order.

8. Pursuant to 11 U.S.C. § 1521(a)(5), the administration or realization of the Debtors' assets within the territorial jurisdiction of the United States is entrusted to the Foreign Representative and the Foreign Representative is hereby established as the exclusive representative of the Debtors in the United States.

9. Pursuant to 11 U.S.C. §§ 1521(a)(6) and 1521(a)(7), all prior relief granted to the Debtors or the Foreign Representative by this Court pursuant to section 1519(a) or 1521 of the Bankruptcy Code shall be extended and that certain *Order Granting Provisional Relief* [D.I. __] shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

10. The Foreign Representative, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

11. No action taken by the Foreign Representative, the Debtors, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the CCAA Proceedings, this order, these Chapter 15 Cases, or any adversary proceeding herein, or any further proceeding commenced hereunder, shall be deemed to constitute a waiver of the rights or benefits afforded such persons under sections 306 and 1510 of the Bankruptcy Code.

12. Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, but not limited to, Bankruptcy Rules 7062 and 1018, (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Foreign Representative and the Interim Lenders are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Foreign Representative and the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

13. A copy of this Order shall be served (i) within five business days of entry of this order, by electronic mail to the extent email addresses are available and otherwise by U.S. mail, overnight or first-class postage prepaid, upon the Notice Parties (as defined in the *Motion of Foreign Representative for Entry of Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007*) and such other entities as the Court may direct and (ii) by

posting on the Foreign Representative's website at https://dm.epiq11.com/aldo. Such service shall be good and sufficient service and adequate notice for all purposes.

14. The Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of the Court.

15. This Order shall be effective and enforceable immediately upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

Dated: Wilmington, Delaware
May __, 2020

THE HONORABLE KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE