**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| The Aldo Group Inc., *et al.*[1] | ) | Case No. 20-11060 (KBO) |
| Debtors in Foreign Proceedings. | ) | (Joint Administration Requested) |

**MOTION OF THE ALDO GROUP INC., AS FOREIGN REPRESENTATIVE OF THE ALDO GROUP INC. AND CERTAIN OF ITS AFFILIATES, FOR AN ORDER GRANTING CERTAIN PROVISIONAL RELIEF**

The Aldo Group Inc. ("Aldo Canada"), in its capacity as the Canadian Court-appointed and authorized foreign representative (the "Foreign Representative") for the above-captioned debtors (collectively, the "Debtors") which are the subjects of reorganization proceedings (the "CCAA Proceedings") commenced under Canada's *Companies' Creditors Arrangement Act* (the "CCAA"), and pending before the Superior Court, Commercial Division, in and for the Judicial District Of Montréal, Canada (the "Canadian Court"), respectfully moves (the "Motion") as follows:

## RELIEF REQUESTED

1. Pursuant to sections 105(a), 362, 363, 364, 365(a), 365(e), 1517, 1519, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), the Foreign Representative respectfully requests entry of an order, substantially in the form attached hereto as Exhibit A, providing the following relief (collectively, the "Requested Provisional Relief"):

[1] The Debtors in these chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers or other unique identifier are as follows: The Aldo Group Inc. (2186); Southwest Capital Holdings Inc. (8248); Aldo U.S. Inc. (6704); Aldo Marketing LLC (1748); Aldo Shoes West Forty Second, LLC (2610); Aldo 1125 Third Ave. Corp. (2110); Aldo 5th Ave. Inc. (2112); Aldo 250 West 125 Inc. (2324); and 1230 Avenue of the Americas LLC (6704). The Debtors' principal offices are located at 2300 rue Émile-Bélanger, Montréal, Canada H4R 3J4.

a. recognizing and enforcing in the United States, on a provisional basis, the initial order (the "Initial Order") that, among other things:[2]

i. authorizes the Debtors to enter into, perform and borrow, as an initial draw, up to CDN$5,000,000 under that certain interim facility (the "Interim Facility");

ii. grants the Interim Lenders a charge against the Aldo Canada and Aldo U.S.'s property for an aggregate amount of USD$6,000,000 (the "Interim Lender Charge") as security for all obligations to the Interim Lenders under the Interim Facility;

iii. grants the Debtors' directors and officers a charge against the Debtors' property for an aggregate amount of CDN$2,350,000 (the "Directors' Charge") as security for the Debtors' indemnification obligations owed to the Debtors' directors and officers in their capacity as such (solely to the extent in excess of applicable insurance coverage and excluding obligations or liabilities incurred as a result of such directors' or officers' gross negligence, willful misconduct or gross or intentional fault);

iv. imposes a stay with respect to claims or actions against the Debtors' directors and officers or their assets in connection with the director's or officer's position at the Debtor;

v. consistent with that certain Interim Facility, authorizes the Debtors to continue to honor or comply with any customer deposits, prepayments and similar programs (like gift cards) (the "Customer Programs");

vi. consistent with that certain Interim Facility, grants the Debtors authority to disclaim or resiliate (*i.e.*, cancel) leases and contracts (including terminate certain employee contracts), subject to the notice procedures and other requirements in the CCAA;

vii. grants the Monitor, the Monitor's legal counsel, the Debtors' (including the Foreign Representatives') legal counsel and the Monitor and Debtors' respective advisors (including financial advisor Greenhill & Co. Canada Ltd.) a charge against the Debtors' property for an aggregate amount of CDN$920,000 (the "Administration Charge," and together with the Directors' Charge and the Interim Lender Charge, the "CCAA Charges") as security for the professional fees and expenses incurred in connection with the CCAA Proceedings and Chapter 15 Cases; and

---

2 Terms used in this section but not defined herein shall have the meanings ascribed to them later in the Motion.

viii. subject to approval and oversight of the Monitor or further order of the Canadian Court, and consistent with that certain Interim Facility, in the interest of efficiency, cost reduction and convenience, grants the Debtors authority to convey, transfer, assign, lease, or in any other manner dispose of property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed CDN$100,000 or CDN$500,000 in the aggregate.

b. granting, on a provisional basis, to and for the benefit of the Interim Lenders, certain protections afforded by the Bankruptcy Code, including those protections provided by section 364(e) of the Bankruptcy Code;

c. applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on a provisional basis, pursuant to sections 105(a), 1519(a) and 1521(a)(7) of the Bankruptcy Code;

d. authorizing the Foreign Representative to operate the Debtors' businesses and administer the Debtors' assets on a provisional basis;

e. conditionally recognizing and enforcing in the United States, on a provisional basis, the Amended Initial Order, subject to the Canadian Court's approval and entry of the Amended Initial Order (anticipated to be issued on or around May 15, 2020),[3] that will supplement the Initial Order by, among other things:[4]

   i. authorizing the Debtors to continue to perform and borrow in total up to USD$60,000,000 (inclusive of the initial CDN$5,000,000 approved in the Interim Order) under that certain Interim Facility;

   ii. increasing the amounts of the CCAA Charges as follows:

      a. the Interim Lender Charge is anticipated to be increased to CDN$120,000,000;

      b. the Administrative Charge is anticipated to be increased to CDN$7,000,000; and

      c. the Director Charge is anticipated to be increased to CDN$2,500,000.

   iii. authorizing the Debtors to pay rent twice-monthly, liquidate inventory, furniture, fixtures and equipment and manage related landlord issues

[3] The Foreign Representative will file the as-entered Amended Initial Order with the Court.

[4] If the order entered by the Canadian Court differs in any material respects from the form attached as Exhibit 10 to the Galarneau Declaration, the Foreign Representative will apprise the court of such changes.

pursuant to the Amended Initial Order and the sales guidelines attached thereto (the "Sale Guidelines").

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider the Motion pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under section 157(b)(2)(P) of title 28 of the United States Code. These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of chapter 15 petitions (the "Petitions") and the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, (III) Recognition of Initial Order and Amended Initial Order, and (IV) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition," and together with the Petitions, the "Petitions for Recognition") for recognition of the CCAA Proceedings under section 1515 of the Bankruptcy Code.

3. The Foreign Representative, in its capacity as authorized foreign representative, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. Venue is proper in this District pursuant to section 1410 of title 28 of the United States Code.

5. The statutory predicates for the relief requested herein are sections 105, 362, 363, 364, 365(a), 365(e), 1517, 1519, and 1521 of the Bankruptcy Code.

## BACKGROUND

6. Aldo Canada and its U.S. and international affiliates (the "Aldo Corporate Group") are a global leader in footwear fashion apparel. Known for its brands, product expertise and leadership in digital commerce, the Aldo Corporate Group operates stores in more than 100 countries, all from its corporate headquarters in Montréal, Canada.

7. Additional information about the Debtors' business and operations, the events leading up to the filing of the Petitions for Recognition, and the facts and circumstances surrounding the CCAA Proceedings and the Chapter 15 Cases, is set forth in the contemporaneously filed *Declaration of David Galarneau in Support of the Debtors' Chapter 15 Petitions and First Day Pleadings in Foreign Proceedings* (the "Galarneau Declaration"). The Galarneau Declaration is incorporated herein by reference.

8. On May 7, 2020, the Debtors filed petitions under the CCAA to commence restructuring proceedings under the supervision of the Canadian Court. That same day, the Canadian Court entered the Initial Order, attached as Exhibit 1 to the Galarneau Declaration, appointing Ernst & Young Inc. ("EY," or the "Monitor") to monitor and assist the Debtors in their business and financial affairs in accordance with section 23 of the CCAA. The Canadian Court also appointed the Foreign Representative to assist and oversee the Debtors.

9. Among other things, the Initial Order authorizes the Debtors to enter into the interim financing documents to fund the post-filing expenditure of the Debtors (the "Interim Facility") pursuant to the terms of that certain DIP Financing Term Sheet, dated May 7, 2020 (the "DIP Term Sheet") between Aldo Canada as Borrower, and Aldo U.S. as Guarantor and National Bank of Canada (together with any institution party hereto from time to time as a lender as successor or assignee thereof, the "Interim Lenders"). A copy of the DIP Term Sheet is attached as Exhibit 9 to the Galarneau Declaration. As set forth in the Interim Facility and as

approved by the Initial Order, the Debtors are authorized to incur a portion, CDN$5,000,000, of the Interim Facility following, among other things, the grant of the provisional relief sought herein. Galarneau Declaration ¶ 40. The Initial Order grants the Interim Lenders a charge and security on all of Aldo Canada and Aldo U.S.'s property. The Interim Lender Charge is entitled to priority as set forth in paragraphs 43 and 44 of the Initial Order.

10. The Initial Order also stays the continuation or commencement of actions and proceedings against the Debtors and their sole director and officers, including any actions or proceedings that may be brought in these Chapter 15 Cases, to ensure that dissident creditors cannot bypass the CCAA Proceedings by commencing litigation or taking other actions outside of Canada to obtain a greater recovery than other, similarly situated creditors. Galarneau Declaration ¶ 44. As further explained below, the Debtors' directors and officers are integral to their restructuring efforts and have rights of indemnification against the Debtors and have been granted by the Canadian Court the Directors' Charge, such that any judgments obtained against the directors and officers would be a *de facto* judgment against the Debtors.

11. The Initial Order further (i) grants authority to honor certain Customer Programs, such as a gift card program, to maintain the customer loyalty that underpins and is fundamental to the Aldo Corporate Groups' business and going concern value, and (ii) grants authority to the Debtors to reject leases and executory contracts (including employee contracts) in the CCAA Proceedings—including with respect to leases and contracts that are either governed by U.S. law or within the territorial jurisdiction of the U.S.—which is necessary to restore the health and profitability of the business.

12. The Foreign Representative further anticipates that the Canadian Court will enter an amended and restated Initial Order (the "Amended Initial Order") [5] on or around May 15, 2020. The Amended Initial Order is expected to authorize the Debtors to: (i) incur the full USD$60,000,000, of the Interim Facility, (ii) increase the CCAA Charges, and (iii) authorize the Debtors to pay rent twice-monthly, liquidate certain inventory, furniture, fixtures and equipment and manage landlord issues related thereto pursuant to the Amended Initial Order and the Sales Guidelines.

13. On the date hereof, the Foreign Representative filed the Petitions for Recognition under chapter 15 of the Bankruptcy Code for recognition of the Canadian Proceeding, thereby commencing the Debtors' chapter 15 cases.

## BASIS FOR RELIEF

### A. *Section 1519 of the Bankruptcy Code Authorizes the Requested Provisional Relief.*

14. Section 1519 of the Bankruptcy Code authorizes the Court to grant the Foreign Representative certain enumerated relief pending the Court's ruling on the Petitions for Recognition:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including —
>
> (1) staying execution against the debtor's assets;
>
> (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are

[5] The form of the proposed Amended Initial Order is attached to the Galarneau Declaration as Exhibit 10.

perishable, susceptible to devaluation or otherwise in jeopardy; and

(3) any relief referred to in paragraph (3), (4) or (7) of section 1521(a).

11 U.S.C. § 1519(a).

15. Section 1519(a)(3) of the Bankruptcy Code expressly authorizes the Court to grant the Foreign Representative any relief referenced in, among others, section 1521(a)(7) of the Bankruptcy Code. Section 1521(a)(7), in turn, permits a court to grant any relief, with certain limited exceptions that are not applicable here, that would be available to a bankruptcy trustee, and therefore authorizes the Court apply sections 105, 362, 363, 364(e) and 365(e) of the Bankruptcy Code to the Chapter 15 Cases on a provisional basis and grant provisional recognition to foreign court orders.

16. Of particular relevance to these Chapter 15 Cases is section 364(e), which provides that a reversal or modification of a financing order does not affect the validity or priority of a post-petition lender's claim or lien. Lenders to foreign debtors in chapter 15 cases are entitled to the protection that their claims and liens retain their validity and priority if a recognition order is not entered. Absent such relief, the incorporation of section 364 into chapter 15 through sections 1519 and 1521(a)(7) would have little effect.

17. Sections 105(a), 1519 and 1521(a)(7) of the Bankruptcy Code also grant the court authority to extend the protections of sections 362 of the Bankruptcy Code not only to the Debtors, but also to their sole director and officers, as non-Debtors, in these Chapter 15 Cases. Indeed, courts in this district have extended and applied the automatic stay to non-debtor entities in chapter 11 cases where the relief is necessary to prevent irreparable harm. *In re W.C. Wood Corp., Ltd.*, No. 09-11893 (Bankr. D. Del. June 1, 2009) [Docket No. 16] (extending stay

protection to officers and directors); *In re Fraser Papers Inc.*, No 09-12123 (Bankr. D. Del. June 19, 2009) [Docket No. 18] (same).

**B. *The Requested Provisional Relief Is Justified.***

18. Provisional relief under section 1519 requires satisfaction of the standard for injunctive relief. 11 U.S.C. § 1519(e); *In re Innua Can. Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D. N.J. Mar. 25, 2009). That same standard applies to a request to extend and apply the automatic stay to a non-debtor entity. In the Third Circuit, that standard requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the injunction is denied; (c) granting provisional relief will not result in even greater harm to the nonmoving party; and (d) the public interest favors such relief. *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted)). The Foreign Representative submits that the standard is satisfied in these Chapter 15 Cases.

i. There Is a Substantial Likelihood of Recognition.

19. As detailed more fully in the Verified Petition and the Galarneau Declaration, there is a substantial likelihood of recognition of the CCAA Proceedings as foreign main proceedings, or, in the alternative, foreign nonmain proceedings. The CCAA Proceedings are "foreign proceeding[s]" and the Foreign Representative is a "foreign representative," as those terms are defined in sections 101(23) and (24) the Bankruptcy Code. In addition, these Chapter 15 Cases were duly and properly commenced by filing the Petitions for Recognition in accordance with section 1515 of the Bankruptcy Code and Rule 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Moreover, the CCAA Proceedings are foreign main proceedings as defined in section 1502 of the Bankruptcy Code because the Debtors' center of main interests is located in Canada for the reasons set forth in the Verified Petition. To the

extent this Court determines that any of the CCAA Proceedings (with respect to the Debtors incorporated outside of Canada) are not recognized as a foreign main proceeding, such CCAA Proceedings are foreign nonmain proceedings because each such Debtor has an establishment within the meaning of section 1502 of the Bankruptcy Code in Canada.

ii. The Debtors Will Suffer Irreparable Harm if the Request for Provisional Relief Is Denied.

20. Provisional recognition and relief under sections 105(a), 362, 363, 364, 365(a), 365(e), 1517, 1519, and 1521 of the Bankruptcy Code in these cases is important to prevent irreparable damage to the interests of the Debtors' estates, creditors, and the efficacy of the CCAA Proceedings. The stay in section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law, halting all collection efforts, harassment and foreclosure actions and providing debtors with necessary breathing room from the financial pressures that caused the bankruptcy filing. Section 365(e) of the Bankruptcy Code provides a debtor with similar relief by prohibiting counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing. Although the Initial Order implements a stay preventing parties from taking actions against the Debtors and their assets wherever located, the Debtors have assets in the United States that may be subject to enforcement actions by certain creditors and litigants that may not believe they are bound by the Initial Order.[6] *See In re Daebo Int'l Shipping Co.*, 543 B.R. 47, 54 (Bankr. S.D.N.Y. 2015) (holding that "the Court finds that under [Canadian] law the stay order plainly was intended to have worldwide effect . . . . [Canadian] law (and the stay order) are clear, and it is consistent with the purpose of Chapter 15 to give effect to them.").

6 The Foreign Representative and the Debtors reserve all rights and remedies with respect to any party that takes action against the Debtors or their assets inconsistent with the Initial Order and Canadian law.

21. If these protections under sections 362 and 365(e) were unavailable, the Debtors could face immediate and irreparable harm resulting from the potential termination of critical leases and contracts and the piecemeal loss of assets from individual creditor collection and enforcement efforts. Indeed, the Debtors are parties to numerous critical leases and contracts with U.S. counterparties that contain provisions granting the counterparty a right to terminate for various reasons, including bankruptcy or insolvency-related defaults. Absent the provisional relief requested, counterparties in the United States may attempt to terminate these valuable leases and contracts, which would undermine the centralized nature and fundamental fairness of the CCAA Proceedings.

22. Courts in this district have recognized the need to provide provisional relief in order to ensure the orderly distribution of a debtor's assets in a single proceeding, and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions. *See, e.g., In re Unique Broadband Sys. Ltd.*, No. 19-11321 (BLS) (Bankr. D. Del. June 13, 2019) [Docket No. 12]; *In re Kraus Carpet Inc.*, No. 18-12057 (KG) (Bankr. D. Del. Sept. 12, 2018) [Docket No. 17] (granting recognition on a provisional basis); *In re RCR Int'l Inc.*, No. 18-10112 (LSS) (Bankr. D. Del. Jan. 24, 2018) [Docket No. 11] (same); *In re Axios Logistics Solutions, Inc.*, No. 17-10438 (BLS) (Bankr. D. Del. Mar. 1, 2017) [Docket No. 13] (same); *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30] (same).

23. In addition, the Debtors will suffer immediate and irreparable harm if the Interim Lenders refuse to allow the Debtors access to the Interim Facility approved by the Canadian Court because the Interim Lenders are not protected pursuant to section 364(e) of the Bankruptcy Code. The Debtors require immediate access to a portion of the Interim Facility to fund working capital requirements, other general corporate purposes and the costs of administering their

CCAA Proceedings until a final hearing can be held on the Petitions for Recognition. With the assistance of EY, the Debtors have prepared projections that provide the projected cash flow for the Debtors on a weekly basis following entry of the Initial Order. As discussed in the Galarneau Declaration, the Debtors expect to run out of cash to continue operations in the week ending June 5, 2020, and potentially earlier, unless additional, immediate funding is provided through the Interim Facility. The funding provided by the Interim Facility is therefore necessary to give vendors, employees and other critical parties who deal with the Debtors confidence that the Debtors have access to funds to meet their post-filing obligations to such parties. Declaration ¶ 38. If such requested relief is not granted, the Debtors will ultimately be unable to meet their obligations and maintain the operation of their business.

24. The Interim Lenders have agreed to provide the Interim Facility upon the terms outlined in the DIP Term Sheet. The terms of the DIP Term Sheet were negotiated, proposed and entered by the Debtors and the Interim Lenders without collusion, in good faith and at arm's length. A further detailed summary of the Interim Facility, and the facts and circumstances surrounding the Debtors' entry into the Interim Facility, is set forth in the *Report of the Proposed Monitor – May 6, 2020*, ¶¶ 38-43.3, which is attached to Galarneau Declaration as Exhibit 11.

25. The Interim Lenders have agreed to provide the Interim Facility according to the terms outlined in the DIP Term Sheet. Southwest is the only secured creditor holding an interest in the assets of the Debtors located in the U.S. that are being pledged to support the Interim Financing. Southwest consents to the priority of the Interim Lender's interest in such assets over its own and does not request relief in the form of adequate protection under section 361 of the Bankruptcy Code or any other form of protection of its interest *vis-à-vis* the Interim Lenders. In light of such support, the Foreign Representative and the Debtors believe that the terms of the

DIP Term Sheet are reasonable under the circumstances. The Interim Facility will preserve and maintain the going concern value of the Debtors' estates, which, in turn, is integral to maximizing recoveries for the Debtors' stakeholders.

26. Accordingly, the Foreign Representative requests that the Court, on a provisional basis, recognize the liens, charges and other protections negotiated in the Interim Facility approved by the Canadian Court and afford the Interim Lenders the protections available under section 364(e) of the Bankruptcy Code. Cause exists to grant the requested relief pursuant to sections 1519 and 1521(a)(7) of the Bankruptcy Code because the Debtors require immediate access to the funds under the Interim Facility and the Interim Lenders have requested, and may not make the funds available unless they are afforded these protections, including the protections of section 364(e) of the Bankruptcy Code. The Interim Lenders have conditioned interim availability of a portion of the Interim Facility on this Court's approval of the protections granted to the Interim Lenders in the Initial Order, and may not make the financing available if they are not also granted provisional protections under section 364(e) of the Bankruptcy Code while final recognition is under consideration.

27. Courts in this district have granted similar relief requested in chapter 15 proceedings. *Essar Steel Algoma Inc.*, No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *Arctic Glacier Int'l, Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *In re Catalyst Paper Corp.*, No. 12-10221 (Bankr. D. Del. Feb. 8, 2012) [Docket No. 60]; *In re W.C. Wood Corp., Ltd.*, No. 09-11893 (Bankr. D. Del. June 1, 2009) [Docket No. 16]; *In re Fraser Papers Inc.*, No. 09-12123 (Bankr. D. Del. June 19, 2009) [Docket No. 18]; *In re Destinator Techs. Inc.*, No. 08-11003 (Bankr D. Del. May 20, 2008) [Docket No. 19]. Absent

immediate interim financing relief, the Debtors and their creditors will suffer immediate and irreparable harm.

15. As described more fully in the Galarneau Declaration, the Debtors may face immediate and irreparable harm if the commencement or continuation of actions against the sole director and officers and their assets are not enjoined. The sole director and officers in question are essential to managing the Debtors' business and ability to implement a successful restructuring. Galarneau Declaration ¶¶ 36-37. Furthermore, the Debtors' sole director and officers have indemnification rights and have been granted a Directors' Charge against the Debtors, such that any judgment against them would be a *de facto* judgment against the Debtors and their assets—to the determent of creditors.

28. The Debtors could also face immediate and irreparable harm if this Court does not recognize and give effect to the Canadian Court's authorization for the Debtors to disclaim (*i.e.*, cancel) leases and other executory contracts (including employment contracts)—including those that are either governed by U.S. law or within the territorial jurisdiction of the United States. For instance, the Debtors currently maintain approximately 429 leases in the United States and expect to incur lease obligations on a collective basis for May 2020 (absent disclaimer) of roughly $9.68 million—over $312,000 per day. Galarneau Declaration ¶ 23. Through this restructuring, the Debtors anticipate that the Debtors will disclaim more than half of such leases in the United States. As explained in the Ferland Declaration, disclaimer has the legal effect of terminating the leases, and the claims of the landlords with respect to those disclaimed leases are treated as a "provable claim" in the eventual plan of arrangement. Ferland Declaration ¶¶ 19-20. In a CCAA, prior to disclaimer, landlords generally may be entitled to payment of rent obligations that become due and owing post-filing. As such, any delay in disclaiming such leases

could cause the Debtors to incur substantial additional post-filing rent obligations that will further diminish funds available for unsecured claims and thereby negatively affect recoveries for unsecured creditors in the CCAA Proceedings. As such, it is vital that the Debtors have the authority from this Court to disclaim leases and other executory contracts.

29. The Debtors are seeking approval from the Canadian Court in the Amended Initial Order to pay rent on a twice-monthly basis, liquidate inventory, furniture, fixtures and equipment and manage landlord issues related to the same pursuant to the Amended Initial Order and Sales Guidelines. As the Debtors maintain hundreds of leases, court approved guidelines will permit the Debtors to disclaim leases and liquidate property in the most efficient and cost effective manner possible, with a goal of avoiding disputes and potentially having to negotiate bespoke resolutions with hundreds of individual landlords.

30. Each of Aldo U.S., through Aldo Marketing, and Aldo Canada offers Customer Programs (such as gift cards) to the Debtors' customers. As it is vital to maintain the confidence and loyalty the Debtors' customers to support future sales and their going concern value, the Debtors seek to honor their commitments to the Aldo Corporate Group's customers.

iii. <u>There Will Be No Harm to Creditors if the Provisional Relief Is Granted.</u>

31. The Debtors' creditors will not be harmed by the requested provisional relief as it will largely preserve the status quo (with certain exceptions aimed at maximizing the value of the Debtors' assets, such as the authority to liquidate certain property and disclaim leases) and will enable the Debtors to continue to finance their operations for the short time necessary for the Court to rule on the Petitions for Recognition. In fact, granting the request for provisional relief will benefit the Debtors' creditors because it will ensure that the value of the Debtors' assets is preserved for the benefit of all interested parties. Indeed, as stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, at 340-42 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297.

Similarly, the legislative history to section 365(e) provides:

> Subsection (e) invalidates ipso factor [sic] or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy. This frequently hampers rehabilitation efforts. If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation.

*Id.* at 348-49, 1978 U.S.C.C.A.N at 6304-05.

32. The Foreign Representative submits that there will be no harm to creditors if the Foreign Representative's request for provisional relief is granted.

iv. The Public Interest Favors Granting the Provisional Relief.

33. As noted above, the requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Debtors' efforts to pursue and complete a successful restructuring for the benefit of the Debtors' creditors and other stakeholders. *See In re W.R. Grace & Co.*, 475 B.R. 34, 208 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013) ("In the bankruptcy context, there is a general public policy weighing in favor of affording finality to bankruptcy judgments."); *In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("[T]here is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings"); *Grimes v. Genesis Health Ventures, Inc.* (*In re Genesis Health*

*Ventures, Inc.*), 280 B.R. 339, 346 (D. Del. 2002) ("Public policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies."); *Rehabworks, Inc. v. Lee* (*In re Integrated Health Servs, Inc.*), 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests.") (citations omitted); *Lazarus Burman Assocs. V. Nat'l Westminster Bank USA* (*In re Lazarus Burman Assocs.*), 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."); *see also In re Adelphia Comm'cns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("The public interest requires bankruptcy courts to consider the good of the case as a whole."); *Am. Film Techs v. Taritero* (*In re Am. Film Techs.*), 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (quoting *Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso* (*In re Gathering Restr., Inc.*), 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)).

34. In addition, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code.

> (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of —
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtors' assets; and
>
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

35. For the reasons stated above, courts in this circuit have frequently granted requests for similar provisional relief in chapter 15 cases. *See, e.g., Essar Steel Algoma Inc., et al.*, No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *Arctic Glacier Int'l, Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *Catalyst Paper Corp.*, No. 12-10221 (PJW) (Bankr. D. Del. Feb. 8, 2012) [Docket No. 60] (order granting provisional DIP relief); *In re Innua Can. Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D. N.J. Mar. 25, 2009) (order granting provisional relief, including protections of automatic stay); *In re Angiotech Pharm., Inc.*, No. 11-10269 (Bankr. D. Del. Jan. 31, 2011) [Docket No. 26] (order granting provisional relief, including protections of automatic stay and 365(e)); *In re MAAX Corp.*, No. 08-11443 (Bankr. D. Del. July 14, 2008) [Docket No. 22] (order granting provisional relief, including protections of 365(e)).

**<u>NOTICE</u>**

36. The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m). The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions and the Foreign Representative's request for entry of the Final Order in the form and manner set forth in the *Motion of Foreign Representative for Entry of Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007*, filed contemporaneously herewith. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, for all of the reasons stated above, the Foreign Representative respectfully requests that this Court: (a) enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein; and (b) grant such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
May 7, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*<u>/s/ Paige N. Topper</u>*

Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@mnat.com
mharvey@mnat.com
ptopper@mnat.com

-and-

HOGAN LOVELLS US LLP

Peter A. Ivanick
Lynn Holbert
Alex M. Sher
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
peter.ivanick@hoganlovells.com
lynn.holbert@hoganlovells.com
alex.sher@hoganlovells.com

Attorneys for the Foreign Representative